Vedder v. Continental Western Vedder v. Continental Western Mr. Chimmers for the appellant, Mr. Titus for the appellant. Mr. Chimmers, you may proceed, sir. Good morning, Your Honor. May it please the Court. Counsel, for the plaintiff's appellant, Reverend Chimmers, the pretzel and stoffer in Chicago. Your Honor, this is an appeal from the Fourth Judicial Circuit, Montgomery County. It's from cross-motion for summary judgment. It's here for some Supreme Court Rule 304, and the review will be denoted. What we are concerned with today is the doctor's targeted tender and the priority of coven between competing policies of insurance. We have a situation here where my client, Heather Vedder, was involved in an accident operating her vehicle with William Grover, the tort plaintiff, who I believe is our next witness. Grover files a two-count personal injury suit against Heather Vedder and her principal, the Nokomis-Witt Ambulance Service. I'll refer to that as NWAA. It's easier to say. The first count of the two-count complaint that Grover filed was for ordinary common-law negligence with respect to the operation of the motor vehicle. The second count is respondeo superior against the principal, NWAA. On this record, it is undisputed by Continental Western, the insurer of NWAA. Two things, that Heather Vedder is insured under the Continental Western policy, and secondly, the auto she was operating is a covered-up. The policy issued to NWAA by the Defendant, Continental Western, is a broad policy. It defines insured as NWAA and its employees. Then defined by that policy to include a volunteer worker. The policy extends coverage to an insured, that is, a volunteer worker, for the operation of a covered auto. Under that policy, covered auto is any auto. So we have Heather Vedder as a volunteer operating her vehicle, which is a covered auto under the Continental Western policy. Notwithstanding that, Continental Western refused to defend its insured Heather Vedder. Not only did it refuse to defend her, it didn't recognize her as an insured at first. That is to say, when it was aware of the lawsuit having been tendered to the defense of NWAA, it did not do what our Supreme Court, Cincinnati Companies v. West American, said it needs to do. Reach out to the insured and inquire, do you want us to defend you? Because it was unmistakable that they were aware of the lawsuit and that an insured was involved. Instead, Heather Vedder was defended by Standard Mutual, the carrier of the personal auto policy that she has with her husband. Now, we hear from Continental Western in their brief a familiar response, and that is the Targeted Tender doctrine does not apply outside of the construction sector, or it certainly doesn't apply to an auto case. They rely on a 4th District case from 2005, Beacon Insurance v. Fidelity and Guarantee Insurance. I argued that case. I argued that case in Adams County. I argued that case to the 4th District. I lost both times. Notwithstanding that, the facts are distinguished. That case, the appellate court, 4th District held, Targeted Tender law applied in auto setting because it shouldn't apply to an omnibus insured, Heather Vedder is not an omnibus insured. NWAA is an omnibus insured under the Standard policy, and it shouldn't apply or it can't apply, where to do so would require you to deactivate a statutory policy. There was a policy on a tow truck and a policy on a disabled delivery truck. The tow truck had a statutory policy of $750,000. The disabled delivery man had $27 million in insurance coverage, $2 million in primary, $25 million in excess. Stand to reason that in the case for the close head injury, a defendant, who was arguably at fault, would rather have $27 million of coverage than 3 quarters of a million. The 4th District said no. Omnibus insured, statutorily mandated policy. We don't have that situation here. What we have, I believe, is a classic example of a scenario for the applicability of a targeted tender. Why? Heather Vedder was acting as a volunteer at the time, according to the allegations of the complaint. It's unmistakable. As a volunteer, she would expect to be covered by her principal's policy. The policy issued to the principal, NWAA, was designed with that in mind. It extended coverage to the volunteers, and it extended coverage to the volunteers for their own automobiles. That having been said, still no defense from Continental Western. Continental Western says, we have an other insurance clause, and where there's an other insurance clause and its excess, it's a block to a targeted tender. Well, how did that come about? How did that come about? The 4th District said construction setting only. The 4th District ignored the 1st District insurer versus issuance, as Chicago Hospital Risk Pooling Program versus Illinois State Medical Insurance Society. That case was a doctor who had an issuance policy, made a targeted tender to his employer at the hospital, agent principal. The 1st District said that was fine. They even went so far as to say it didn't matter that the hospital didn't have an insurance policy. It had an insurance trust. They also went so far as to say that where an agent is sued and the principal is sued under the doctrine of respondeat superior, as here come two of the Crowder complaints, that it's really a lawsuit against the principal is really a suit against the agent as well, because the principal's not liable unless the agent was liable. Liability is derivative following Towns versus Yellow Cab from our Supreme Court, and held that the liability of a principal for the acts of the agent is deemed that of one tort fee. The 1st District went so far as to say, sure, Chicago Hospital Risk Pooling Program cannot discharge its duty to defend the hospital without also defending the suit against its covered employer. It owed a duty to defend. It had an excess other insurance clause. So it's the complete opposite of the scenario we have here that resulted in Sam's decision, because clearly NWAA had no liability other than the operation of a motor vehicle by Heather Vedder, its volunteer. So let me ask you a couple of questions here. So NWAA, you're saying, cannot invoke the targeted tender doctrine to deselect coverage with its own insurer. They're saying Heather Vedder can't deselect her standard neutral policy to get to the continental western policy. And her vehicle, she was driving her personal vehicle, and it's a non-owned vehicle, right? Yes, to NWAA. That is correct. However, NWAA doesn't rely on Heather, you're not insured, or Heather, you're not driving an insured vehicle. What it relies on solely is the other insurance provision, which says if there's other insurance, then this policy is excess. Don't they argue that the continental policy provides excess coverage, not primary, where the auto was not owned by NWAA? Based on the other insurance provision. And I would submit that our Supreme Court in John Burns Construction v. Indiana Insurance said the other insurance clause cannot be looked to when there's a targeted tender. The other insurance does not overcome the right of an insurer to target tender a particular insurer. And what has happened is the Supreme Court has not spoken to this issue. The Supreme Court of Illinois recognized the targeted tender concept in John Burns Construction following the 1992 First District case, Institute of London Underwriters v. Hartford. They recognized it, and they said the other insurance clause cannot be looked to. It cannot be looked to as a block. It cannot be looked to for the targeted carrier that I see contribution from other carriers. Then the Kojima case went to our Supreme Court. There the Supreme Court said you can't have a targeted tender to an excess policy. It made sense because Illinois recognizes horizontal exhaustion. That is, all policies on one level must be satisfied before you go to the next level. What happened in Kojima was... But don't they rely on country mutual? They do. Oh, well, country mutual did not involve the duty to defend. Justice Welch wrote the opinion for this court 11 years ago, 10 years ago, on remand from the Supreme Court to ascertain the priority of coverage on a settled case that didn't deal with the duty to defend. It dealt with who's on first with respect to indemnity. And there it said, this court held, the driver's policy was primary, the school board policy, that would be the principal's policy, was excess. That's not this case. This case is duty to defend. This case is... For them to say the other insurance clause is a block to a targeted tender is a misreading I would submit to this court of Kojima. In Kojima, the insured there had access to multiple policies. Let's say Kojima looked to X. X had a primary policy and an umbrella policy. And Kojima said, we target and selectively look tender for sole and exclusive defense and indemnity, your primary policy and your excess policy. Now there was a spike, spike through the primary into the excess level. The Supreme Court said, no, you can't do that. Illinois follows what's called horizontal withdrawal. You can target tender the primary policy. And you can target the excess when all the primaries are gone. That's not this case. And also this case does not involve an excess policy. It involves a primary policy that by coincidence, that is to say, by... Due to the fact that Heather Vedder had her own policy, becomes excess because it says it's a primary policy. Unlike what the Kojima court was dealing with. The first district in two cases has recognized that if the other insurance clause in the policy, which is otherwise a primary policy, says it applies as excess if there's other insurance, then there's no targeted tender. Well, if this court chooses to follow the first district, which I think you sometimes do, then there's no targeted tender. However, the court would then have to say the other insurance clause applies to the duty to defend. And since the Raymark case out of the first district in 86, affirmed by the Supreme Court in 87, courts have not looked to ever issuing a decision, published, that says the duty to defend is determined by looking to the other insurance clause. It is long in the law of Illinois, recognized by Raymark, that no matter how many policies there are, if they're triggered, every carrier has an independent, indivisible duty to defend the mutual insurer. Clearly, that would apply here. Continental Western admits Heather Vedder is an insured, operating and covered law firm, which should clearly trigger coverage. But they say the other insurance clause says if there's other insurance, then we're excess. If you look at the standard mutual other insurance clause, which is Heather Vedder's own policy, it applies other insurance to loss, which the vast majority of insurance policies looked at by Illinois courts do. It applies to loss. It goes to indemnity. It has nothing to do with the duty to defend. That being said, if this court chooses to follow the first district, which is an apparent jump from the Supreme Court decision in Kojima, then the court would say, okay, no targeted tender, not because it's an auto case, but no targeted tender because the other insurance clause is an excess clause, which frankly makes no sense. But if you choose to follow it, well, then there'll be the fifth district and two first district cases. Bearing in mind, I cited CHIRP. CHIRP came three years after those two first district cases. It doesn't even cite them. So the first district's in a conflict itself. That having been said, you still need to deal with the other insurance clause and whether it applies to the duty to defend. I would submit to the court it does not. They have cited one case, not one, that says the other insurance clause can be looked at to determine who has the primary duty to defend. They say look to country mutual versus teacher's insurance. The Supreme Court didn't deal with it. In fact, the Supreme Court said, we're not deciding priority of coverage, and they kicked it back to this court. And then a few months after that remand, this court decided the teacher's policy was primary or indemnity, and the school board's policy, Sandoval High School District policy, was excess. That's the country mutual policy, or the teacher's policy. We submit that. That result makes no sense. Heather Vedder is an insurer. They admit it. Heather Vedder made a targeted tender to Continental Western, which should have recognized her position of an insurer entitled to target tender, notwithstanding its analogies. That really shouldn't matter, because the rationale behind the targeted tender doctrine applies no matter what the claim. Why would an insurer do that? An insurer is capable of picking one policy over another. Why use your own? You have a fear or a risk of being dropped by your insurer. You want to avoid premium increases. You want stability in coverage during a pending lawsuit. And why would you want $100,000 in coverage when you could have $2 million, provided by your principal? Part of doing their work, driving around, cleaning ambulances, going to accident scenes, which she did, as alleged in the Kroger lawsuit. So for those reasons, as to Heather Vedder, we ask this court to reverse. As to Standard Mutual, her insurer, we would submit to the court that what the trial court did here, and it's interesting, the trial court heard argument on August 30 of last year, which is almost a year ago today, decided the case in December, and here, nine months later, we're arguing the appellate and the appellate. It has moved quickly, notwithstanding we have 700 or 800 pages in this record. Standard Mutual was asked by NWAA to provide it with a defense. NWAA is an omnibus insurer under the standard policy issued to Heather Vedder and her husband. An omnibus insurer is a person or an organization that falls within the definition. Anyone who could be liable for the operation of an automobile by an insurer is entitled to cover. Well, NWAA could be liable for Heather Vedder's operation of an automobile. An omnibus insurer is not entitled to make a target attendance, so said the 4th District in Feekin v. Fidelity. NWAA has not made a targeted attendance, and Continental Western admits NWAA did not make a targeted attendance. Standard Mutual, in its declaratory judgment, said to Continental Western, the insurer of NWAA, we agree to provide 50% of the defense costs for NWAA that have been incurred, and 50% of the defense costs going forward. The trial court said no. Your primary, their access. How could the trial court do it? The trial court looked to only one thing. The omnibus insurer definition said, all right, you're an insurer under the Standard Mutual policy, but the other insurance clause is applied, and under the other insurance clause of the Continental Western policy, for a non-owned auto, that policy is accessed. Well, clearly the auto is non-owned as to NWAA. But when you look at the Standard Mutual policy, it doesn't talk about a scenario like that. It says that there's other insurance applicable to a loss. Defense costs aren't lost. Loss is indebted. Loss is damaged. Defense costs aren't damaged. The ruling was erroneous. The ruling should be reversed. As to NWAA, this court should reverse and enter judgment that Standard Mutual is responsible for 50% of the defense costs incurred and 50% of the defense costs going forward. The way the trial court has it, Standard Mutual would be responsible for everything. And it shouldn't, because the other insurance clause doesn't apply. Whereas here, two carriers are triggered, each carrier according to Ramar. And there's nothing contrary in Illinois jurisprudence yet. Each carrier has an independent, indivisible duty to defend the mutual insurer. Since NWAA hasn't said, I want Standard Mutual instead of my own carrier, which is a target, then both carriers are at risk with respect to defense. Unlike Heather Vetter, who had her $100,000 policy with Standard Mutual and is entitled to coverage under a $2 million policy that NWAA had with Continental Western, who said, I wrote to Continental Western for my sole and exclusive defense and indemnity. They turned her down. She had to sue her insurer. For all those reasons, we've asked this court to reverse. And reverse, you could enter judgment in this court for these plaintiffs or reverse and remand for the purpose of entering judgment. I'll reserve whatever time I have left for myself. Let me ask you a question. I was taking notes, so you may have answered. Clearly, the 4th District rejected targeted tender in the context of the auto liability. Right. Right? And that was Pekin, right? It was Pekin versus Fidelio. And then did you say that NWAA did not make a targeted tender? That's correct. They did not. Heather Vetter made it. The rejection of the targeted tender concept by the 4th District was a little more than it was an auto case. They said they hadn't seen it outside the construction arena. But they held it couldn't be done because it was an omnibus insurer who was trying to deselect the Pekin policy, which was a statutory mandated policy. Thank you. Thank you, sir. Mr. Titus? Did I use up all of his extra time? Did I use up all of his excess time? Yes, sir. Okay. Good morning. May it please the Court. Counsel. Kevin Titus on behalf of Defendant Appalee Continental Western Insurance Company. Counsel's right. This is about priority of coverage between two insurance companies. One company, Standard Mutual, wrote an insurance policy that covered the automobile that Heather Vetter drove that was involved in an accident. Continental Western wrote an insurance policy to NWAA, which was... It's the ambulance agency for which Ms. Vetter is a volunteer. And that policy provides excess coverage in circumstances where a non-owned auto is used. And that's what we have here. A non-owned auto when they're trying to suggest that, no, no, no, the Continental Western policy is primary. They contend that it's primary. And their position is wrong. It's unfounded by two Supreme Court decisions. There's the State Farm versus Universal Underwriters decision that we cite, too. And then there's also the Country Mutual decision, which we've already discussed about from the Supreme Court. Can we start with the Pekin case? Because he distinguishes Pekin because here, Vetter made the claim, not NWAA. Sure. Does that distinguish Pekin in this case? The Pekin versus Fidelity? No. Not one bit. I'd like to just back up for one moment. I want to make a point. He talks about, he says, Country Mutual didn't involve the duty to defend. It doesn't involve defense costs. It does, too. It involved defense costs. You can look it up in the Illinois Supreme Court's opinion. We cite it in our brief. That decision not only involved indemnity, it involved defense costs. It's 195 ill seconded 396. Now, based on Country Mutual and what this court did on remand, if you look at the other insurance clause that was at issue in Country Mutual, and you look at the Continental Western's other insurance clause, they're virtually identical. And it's our position that the decision of this court on remand also supports our position that the Continental Western policy provides excess coverage and the standard mutual policy is primary coverage because the vehicle involved was Heather Vedder's vehicle, a non-owned vehicle under the Continental Western policy. Trying to get around that, because that's case authority from this district, two Supreme Court cases that support the notion that the insurer of the vehicle is primary coverage. Now, they try to get around that with the targeted tender. And you heard him. He talks about the Keaton case. Fidelity and guarantee is how I'm familiar with referring to it. He talks about the CHRPP cases. He talks about the John Burton case. But one thing that never came out of his mouth this morning was the notion of bargain for. And if you look at every target tender, the doctrine requires the reason why you can target tender a policy is two reasons. One, you either pay for the premium for that policy and there's no evidence that they've admitted they didn't pay any premium for the NWAA policy, Heather Vedder vehicle. And the other thing is that you bargain for that coverage under that policy. John Burton's the construction context. How does that arise? Well, that arises because you have contractors, subcontractors, owners, and all the owners and contractors tell the subcontractors, yes, you can bid on our jobs, but additionally, you know what, you're going to put us as additional insurers on your policies. And if you don't do that, you're not going to get the bid. And that's a negotiated bargain. It's bargained for. And that's one thing that the fidelity and guarantee decision talked about. They talked about, they rejected target tender in the auto context because it violated an auto, a statute, a statutory requirement that would require a tow truck to have insurance, but they also mentioned and talk about the fact that unlike John Burns, there's no bargain for coverage. We talk about this a lot in the state auto decision, and they actually cite the state auto decision, which was a 4th District opinion that explained what they did in the Beacon decision. And that case makes very clear the requirement for bargain for coverage. And they admit that in their brief when they discuss and say that NWAA can't target tender because they didn't bargain for this coverage. Well, there's no evidence  ever bargained for this coverage. None. None. And they've never even suggested that she's bargained for this coverage. The first time they ever even cited any evidence that she bargained for this coverage was in their reply. And they say, well, the NWAA policy provides her, you know, it makes her an insurer, and the underlying complaint alleged that when she was driving this vehicle, she was acting in the scope and course of her duties as a volunteer. And that's all they get. That's as close as they come to bargaining for it. They talk about implied, inferred coverage, you know, must have been implied in the agreement. It's just, it's unsupported. There's nothing there. They talk about the CHRPP case and they suggest that that case somehow involves a common law, a right and extension of the doctrine for just the absolute right as a matter of law for an employee to be able to target tender its employer's insurance coverage. And CHRPP doesn't stand for that at all. And we've cited to it in our brief where if you look at it, it's clear that the physician had an oral contract where he bargained with the hospital, his employer, to be covered under their insurance policy. And all this talk about the duty to defend and you can't discharge it for the hospital if you don't do it for this doctor, what that has to do with is the fact that that doctor was actually named as an insurer on that policy because he bargained for it as part of his employment agreement. That's totally absent here. They just ignore it. They absolutely ignore it. He didn't even address it. And I'd like to also point out about the Kojima policy, the Kojima case. And that talks about you can't target an excess policy. And that applies here. And the cases since then, the River Village case has applied here to an excess by coincidence. Now, excess by coincidence, that doesn't mean it's not excess. That doesn't mean it's not excess. And the court in Kojima talks about that and they cite the Justice Freeman's concurring opinion. I think it was in the Northland case. I may have that wrong, but we cite it in our brief. And he goes through all these different types of coverage and all the different ways insurance policies are accessed. And one is excess by coincidence, which is when a policy that normally might provide primary coverage contains a provision within its other insurance clause that makes excess coverage. And that's exactly what existed in the country mutual case. That policy was excess by coincidence. Same as it here. Excess by coincidence. And it applied. And there's no good reason why you would treat that excess coverage any differently from the policy at issue in Kojima. And so I would suggest that even if they get around the bargaining floor requirement, which they can't meet and they haven't met, still, you know, even if you assume they bargained for it, well, what did they bargain for? Let's look at this other insurance clause. They bargained for excess coverage. That's what Continental and Western agreed to provide. Excess coverage for a non-owned automobile. And they just ask you to ignore that and write it out of the contract. And you can't do that. The court didn't do it in country mutual and they shouldn't do it here. His discussion about all sums, it just doesn't apply here. It doesn't apply here, first of all. He cites the, nowhere in that Raymark decision will you ever read anything that says all sums because it says all sums, that means primary coverage. The mere fact that two words all sums appears in a policy doesn't make the policy primary. And in Raymark, you had primary insurance. There was no dispute that they provided primary coverage. Nobody there said we provide excess coverage. They all provided primary coverage and they knew it. And it was a period of time over 20, 30 years talking about asbestos liabilities when you have bodily injury throughout a long period of time for each individual claimant. And those primary insurers undisputedly primary insurers by their own admission were arguing over how do they pay for the defense. And they were suggesting we pay pro-rat. Meaning if I have one policy out of 20 years, I pay 5%. I don't care if the 19 other insurers pay 5%. And the Supreme Court affirmed and said no, no, you're all primary insurers and so you have a full duty to defend. And then fight amongst yourselves between the insurers for how you apportion it. But we're not going to make the insured go out and fight for it and go out and sue all 20. They can pick one of them. And that's why that decision is there and in other jurisdictions some jurisdictions have pro-rat. And that's been a big issue but it involves primarily the context of long-term liability, long-tail claims. And that's not present. And you look at the  look at the time to         had claims and if you look at the people who had claims but if you look at the individuals who had claims        claims   look at the individuals who had claims but if you look at the individuals who do have claims then            claims but if you look at the individuals who do have claims but if you look at the individuals who do have a claim determining that there is a missing claim and because we are aware of this and that there is a claim   there is a missing claim and because we are aware of this and because we are aware of this claim and because we are        aware  because this is a claim and because we are aware of this claim and because the authorities have said we are aware of  claim